**FILED**

**August 31, 2015**

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 1:02 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| LUTHER BUCHANAN<br>        Employee,<br>v.<br>CARLEX GLASS CO.<br>        Employer,<br>And<br>TRAVELERS<br>        Insurance Carrier. | Docket No.:  2015-01-0012<br><br>State File No.: 22925 2015<br><br>Date of Injury:  March 13, 2015<br><br>Judge:  Audrey A. Headrick |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on August 12, 2015, upon the Request for Expedited Hearing filed by Luther Buchanan (Mr. Buchanan), the Employee, on July 21, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Carlex Glass Company (Carlex), is obligated to provide additional medical benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes Mr. Buchanan is entitled to additional medical treatment.

## ANALYSIS

### Issue

The Dispute Certification Notice (DCN) issued in this claim indicated a number of issues. The Court did not decide issues marked on the DCN unless presented for determination at the Expedited Hearing. The parties presented the following issue for determination at the Expedited Hearing:

*Whether Mr. Buchanan has demonstrated by the evidence he would likely prevail at a hearing on the merits on the issue of additional medical treatment.*

1

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

Exhibit 1: Affidavit of Luther S. Buchanan;
Exhibit 2: Medical records of Tennessee Orthopaedic Clinics (TOC);
Exhibit 3: Medical records of BMH Occupational Health Center (BMH);
Exhibit 4: Affidavit of Carey Best;
Exhibit 5: Affidavit of George Dickens;
Exhibit 6: Affidavit of Michael Selesky;
Exhibit 7: Backlite Paint (8 HR.) Check Sheets (Check Sheet);
Exhibit 8: Photograph;[1]
Exhibit 9: Photograph;
Exhibit 10: Video surveillance footage taken at Carlex;
Exhibit 11: Company Policy 8.1 of Carlex; and,
Exhibit 12: Photograph.

The following documents were marked for identification purposes only:

1. Notice of Denial of Claim for Compensation (Notice of Denial); and
2. Recorded Statement of Luther Buchanan.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), May 26, 2015;
- DCN, July 15, 2015; and
- Request for Expedited Hearing, July 21, 2015.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. Luther Buchanan;
- Mr. George Dickens;
- Mr. Michael Selesky; and
- Mr. Carey Best.

---

[1] The Court admitted three photographs of the area of the alleged injury. The first photograph shows the subject machine from a distance. Exhibits 8 and 9 show a close-up of the subject machine, with depictions made by two witnesses.

2

The parties stipulated Mr. Buchanan provided legally-sufficient notice of his alleged injury to Carlex; the surveillance video shows Carey Best, a co-worker, changing a screen; and, Carlex provided a panel of physicians to Mr. Buchanan.

## History of Claim

Mr. Buchanan is a fifty-five-year-old resident of Monroe County, Tennessee. (*See* PBD.) Carlex, a manufacturer of glass windshields, employed Mr. Buchanan as a Production Technician Level 3. On the morning of March 13, 2015, Mr. Buchanan was working third shift in the paint room on the Backlite 1 machine.[2] There are four machines in the paint room. (Ex. 5.) The surveillance cameras for the Backlite 1 and Backlite 2 machines were mislabeled when they were installed. *Id.* The surveillance camera labeled Backlite 1 actually records Backlite 2 and vice versa. *Id.*

Mr. Buchanan allegedly injured his right knee while changing a ripped paint screen on Backlite 1 with his trainer, Sandy Harrison. In his affidavit, Mr. Buchanan stated the injury occurred at "about 6:00 a.m." (Ex. 1.) One of Mr. Buchanan's duties in the paint room was to make sure the paint machine was running properly, and to change the screen if it ripped. If the screen rips, Mr. Buchanan must physically remove the ripped screen and replace it with a new screen. The entire process takes approximately fifteen minutes. Mr. Buchanan bent down to use a taper gauge to align the new screen.[3] He testified he stood up to turn after setting the screen, and his right foot caught on the back left side of the machine. On a photograph of Backlite 1 taken from video surveillance, Mr. Buchanan drew circles at the locations of where he stepped at the back of the machine and to the left side of the machine. (Ex. 9.) He also drew an "X" at the approximate location where the twisting incident allegedly occurred, with the preface that the photograph does not clearly show the location where his foot caught. Mr. Buchanan testified he "did not holler" or "fall down" when he felt a pain or pull in his right knee.

Mr. Buchanan initialed a Check Sheet every fifteen minutes during his shift in the paint room. (Ex. 7.) The Check Sheets for March 12, 2015, and March 13, 2015, show the only time Mr. Buchanan changed a paint screen was at approximately 3:00 a.m. on March 13, 2015. *Id.* The March 13, 2015 Check Sheet shows his co-worker, Carey Best, changed a paint screen at approximately 6:00 a.m. *Id.* Mr. Buchanan acknowledged the video surveillance allegedly taken during the shift on March 13, 2015, shows him changing a screen without any indication of his knee twisting, or of an injury occurring. (Ex. 10.) On the video surveillance shown to the Court, there is no date or time-stamp displayed on the footage. *Id.* The video surveillance also shows Carey Best, his co-worker who worked on the Backlite 2 machine, changing a screen at 6:00 a.m.[4] *Id.*

---

[2] Mr. Buchanan worked from 10:30 p.m. on March 12, 2015, through 7:00 a.m. on March 13, 2015.

[3] A taper gauge is a measuring device.

[4] Mr. Best testified he had not seen the surveillance video. He also testified he did not recall changing a screen on March 13, 2015.

3

While working on the catwalk, the employees working on Backlite 1 and Backlite 2 cannot see what the other is doing. During cross-examination, Mr. Buchanan testified the incident must have happened at approximately 3:00 a.m. based upon the Check Sheet for March 13, 2015.

George Dickens submitted an affidavit and testified at trial. (Ex. 5.) He is the Health & Safety Manager at Carlex. Mr. Dickens investigates any accidents that occur at Carlex. He testified engineers installed the surveillance cameras, but he operates and is responsible for the surveillance equipment. Mr. Dickens testified the video surveillance equipment located at Carlex has file names showing the date and time-stamps. As custodian of the surveillance equipment, he testified the video footage shown to the Court was from March 13, 2015, at approximately 3:30 a.m. and at approximately 6:00 a.m.[5] Mr. Dickens testified he watched the video footage for the entire day of March 13, 2015. He testified there were no significant events shown on the video surveillance, and the Check Sheet was consistent with the video.

Mr. Buchanan did not report an injury on Friday, March 13, 2015. He completed the remainder of his shift. He stated the use of ice and heat on Friday and Saturday lessened the pain in his knee. He worked Sunday night without any problems.

On Monday night, Mr. Buchanan stated his knee started hurting again. He then reported his right-knee injury to Michael Selesky, his supervisor, on either March 17, 2015, or March 18, 2015, and filled out an incident report. Carlex's policy is for employees to report any injury immediately. (Ex. 11.) Mr. Selesky testified Mr. Buchanan reported an injury to him on March 18, 2015. He testified Mr. Buchanan told him he hurt his knee around 6:00 a.m. on March 13, 2015, while working in the paint room when his "foot caught in the frame of the painter." In Mr. Selesky's affidavit, he stated Mr. Buchanan told him "he was changing the print screens when he hurt his knee." (Ex. 6). On cross-examination, Mr. Selesky did not recall Mr. Buchanan telling him anything about setting the screen. On a photograph of Backlite 1, Mr. Selesky circled the location where he understood Mr. Buchanan was injured. (Ex. 12.)

Mr. Buchanan selected Dr. Bryan Thompson at BMH from a panel of physicians. (*See* PBD.) On March 25, 2015, Mr. Buchanan gave a history to Dr. Thompson that "[o]n 3/13/2015, he was changing a screen in the paint room, and his foot stuck between the table top on the catwalk and suddenly felt some pain in his right knee." (Ex. 3.) Dr. Thompson diagnosed Mr. Buchanan with a possible meniscal tear but released Mr. Buchanan to return to work without restrictions. *Id.* Dr. Thompson checked a box labeled "Work Related." *Id.* On April 1, 2015, Dr. Thompson's diagnosis and medical opinion remained the same. *Id.*

---

[5] As a result of Mr. Dickens' cross-examination, defense counsel acknowledged the footage initially shown to the Court did not show Mr. Buchanan completing the entire screen change. However, the additional footage subsequently shown to the Court did not show the occurrence of anything significant.

4

On April 15, 2015, Mr. Buchanan returned to Dr. Thompson complaining of right-knee pain. *Id.* Dr. Thompson stated he "contacted the employer by phone and discussed [the] visit." *Id.* He made a "[r]eferral to Maryville Orthopedic Clinic . . . due to his [Mr. Buchanan's] lack of improvement and need for further intervention." *Id.* Dr. Thompson noted he discussed work restrictions with Carlex. *Id.* On the "Visit Summary for Employer," Dr. Thompson again checked the box indicating Mr. Buchanan's condition was work-related. *Id.*

On May 5, 2015, Mr. Buchanan saw a physician at TOC, but it is unclear from the record which physician saw Mr. Buchanan. (Ex. 2). It is also unclear to the Court whether Mr. Buchanan selected the TOC physician from a panel. However, the "WorkLink Physician's Report" shows Travelers as the insurance company, provides a claim number, and lists the name of the case manager. *Id.* The physician diagnosed Mr. Buchanan with a right-knee sprain, checked the box indicating his condition is work-related, and referred him to have a right-knee MRI for evaluation of a medial meniscus tear. *Id.* On the same date, Travelers filed a Notice of Denial regarding Mr. Buchanan's claim.

At the close of Mr. Buchanan's proof, Carlex moved for a "directed verdict." It argued Mr. Buchanan failed to meet his burden of proving he would likely prevail at a hearing on the merits. The Court took the matter under advisement and denied the motion at the close of all of the proof.

Mr. Buchanan filed a PBD on May 26, 2015, seeking medical benefits. The parties did not resolve the disputed issues through mediation, and the Mediation Specialist filed the DCN on July 15, 2015.

**Mr. Buchanan's Contentions**

Mr. Buchanan contends he sustained a work-related right-knee injury at Carlex on March 13, 2015, while changing a ripped paint screen on Backlite 1. He reported the injury to his supervisor. Mr. Buchanan received a panel of physicians and treated with Dr. Bryan Thompson at BMH. Mr. Buchanan contends he also received one authorized visit with a physician at TOC. He argues that, because he neither fell down nor cried out at the time of injury, does not mean he did not injure his knee. Mr. Buchanan acknowledges he may have been incorrect about the time of his injury. He also acknowledges he did not immediately report his injury to Carlex, but the law states he has more than five days to report an injury. Mr. Buchanan seeks an order for medical benefits.

5

## Carlex's Contentions

Carlex contends Mr. Buchanan is not entitled to workers' compensation benefits because he failed to meet his burden of proof in establishing his injury arose primarily out of and in the course and scope of his employment. Specifically, Carlex argues the surveillance video shows no injury on March 13, 2015, and that Mr. Buchanan waited five days to report his alleged injury. Therefore, Carlex argues it properly denied Mr. Buchanan's claim.

## Findings of Fact and Conclusions of Law

### Standard Applied

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine the employee is likely to prevail at a hearing on the merits. *Id.*

### Factual Findings

The Court finds Mr. Buchanan sustained an injury to his right knee on March 13, 2015, when he was changing a ripped paint screen. He timely reported the injury. Carlex provided a panel of physicians, from which Mr. Buchanan selected Dr. Bryan Thompson at BMH as his authorized treating physician. Dr. Thompson referred Mr. Buchanan for evaluation with an orthopedic physician, who ordered an MRI of the right knee. Both Dr. Thompson and the physician at TOC checked a box indicating Mr. Buchanan's right-knee condition is work-related.

### Application of Law to Facts

For injuries on or after July 1, 2014, an employee must show his injury arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(13) (2014). "Arising primarily out of and in the course and scope of employment" requires a showing, to a reasonable degree of medical certainty, that the injury causing disablement or the need for medical treatment contributed more than 50% considering all causes. Tenn. Code Ann. § 50-6-102(13)(C) (2014). However, the requirement that an employee must show by a preponderance of the evidence that the employment

6

contributed more than 50% to the injury *has yet to attach at this interlocutory stage of the proceedings*. The statutory directive of Tennessee Code Annotated section 50-6-239(d)(1) (2014) requires this Court to determine whether Mr. Buchanan is likely to prevail at a hearing on the merits. This interlocutory standard does not alleviate the need for adequate proof of causation at a Compensation Hearing, or forestall either party from presenting additional evidence at such hearing to reverse or modify this interlocutory order. *See McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015); *cf. McCall v. Natl. Health Corp.,* 100 S.W.3d 209, 214 (Tenn. 2003).

Carlex contends there is insufficient evidence Mr. Buchanan's right-knee injury arose primarily out of or within the course and scope of his employment as required by Tennessee Code Annotated section 50-6-102(13)(B) (2014). It argues Mr. Buchanan has not met his burden of proving his employment with Carlex contributed more than 50% to his injury. The crux of Carlex's argument is Mr. Buchanan never sustained an injury at work on March 13, 2015. To support its contentions, Carlex attempted to discredit Mr. Buchanan's testimony that he injured his right knee on March 13, 2015, when he was changing a ripped paint screen. Carlex relied upon video surveillance footage allegedly taken on March 13, 2015, and Mr. Buchanan's delay in reporting his injury five days after it allegedly occurred.

Mr. Dickens, Health & Safety Manager at Carlex, played video surveillance for the Court and testified he downloaded from the video equipment at work onto his laptop. However, this Court gives little weight to the video surveillance footage. As previously stated, the video footage and photos admitted into evidence do not include either the date or the time. Mr. Dickens testified the surveillance equipment mislabels the footage as "Backlite 2," when it should actually be "Backlite 1." He testified engineers installed the surveillance equipment, and he maintains it. Mr. Dickens' testimony that the surveillance equipment files at Carlex show the date and time of each video is not persuasive to the Court, given the mislabeling, the lack of a date, and the lack of a time-stamp on the footage submitted.

Instead, the Court finds the Check Sheet from March 13, 2015, in combination with Mr. Buchanan's testimony and the medical records, support a finding he sustained a right-knee injury at approximately 3:00 a.m. Mr. Buchanan's initial recollection that his injury happened at 6:00 a.m., as reported to Mr. Selesky, is a minor discrepancy and does not discredit his testimony. Although the medical records admitted are sparse in nature, the records reflect that both his authorized treating physician and an authorized orthopedic physician are of the opinion Mr. Buchanan's right-knee condition is work-related.

Pursuant to Tennessee Code Annotated section 50-6-102(13)(E) (2014), "[t]he opinion of the treating physician, selected by the employee from the employer's

designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Carlex did not rebut the medical opinions given by BMH and TOC, and Mr. Buchanan selected either one or both medical providers from a panel. This Court finds Carlex must provide ongoing medical treatment made reasonably necessary by the accident as required by Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014). Since there is no evidence as to whether Mr. Buchanan selected TOC from a panel, the Court finds Mr. Buchanan has the option to continue to treat with TOC or to request a panel of orthopedic knee specialists.

This Court is constrained to evaluate all of the evidence, both lay and expert, at this interlocutory stage of the proceedings to determine if Mr. Buchanan is likely to succeed on the merits at a hearing. When applying the statutory directive of Tennessee Code Annotated section 50-6-239(d)(1) (2014), Mr. Buchanan has come forward with sufficient evidence from which this Court concludes he is likely to prevail at a hearing on the merits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Buchanan's injuries shall be paid and Carlex or its workers' compensation carrier shall provide Mr. Buchanan with medical treatment for his injury as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by Carlex or its workers' compensation carrier providing Mr. Buchanan with his choice of continuing treatment at TOC or with a panel of orthopedic knee specialists as required by that statute. Medical bills shall be furnished to Carlex or its workers' compensation carrier by Mr. Buchanan or his medical providers.

2. This matter is set for a Scheduling Hearing on October 16, 2015, at 8:30 a.m., EDT.

3. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

4. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

8

**ENTERED** this the 31st day of August, 2015.

<u>Cundrey Headrick</u>
**Judge Audrey A. Headrick**
**Court of Workers' Compensation Claims**

<u>Initial (Scheduling) Hearing</u>:

A Scheduling Hearing has been set with **Judge Audrey A. Headrick, Court of Workers' Compensation Claims. You must call 423-634-0164 or toll free at 855-383-0001 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of**

9

**Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical Benefits was sent to the following recipients by the following methods of service on this the 31st day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|------|---------|------|-------|------------------|
| Luther Buchanan | X | | | 613 Isbill Road #1 Madisonville, TN 37354 |
| Joseph Lynch Ashley Griffith | | | X X | jlynch@wimberlylawson.com agriffith@wimberlylawson.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov